## BRABSON v. FAY HUNT ERECTING CO.

(Supreme Court, Appellate Division, Second Department. July 25, 1912.)

1. MASTER AND SERVANT (§ 204*) — INJURIES TO SERVANT — ASSUMPTION OF RISK.

   While the Employers' Liability Act (Consol. Laws 1909, c. 31, §§ 200–204) makes the question of assumption of risk one for the jury, it does not render a master liable for a servant's injuries, in the absence of proof of his negligence.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 544–546; Dec. Dig. § 204.*]

2. MASTER AND SERVANT (§ 293*)—INJURIES TO SERVANT—INSTRUCTIONS.

   In an action for an injury received by a servant who fell from a scaffolding, an instruction that the master would not be responsible for the way in which the servant adjusted the scaffold, having been given without exception, removed the case from the provisions of Labor Law (Consol. Laws 1909, c. 31) § 18, which fixes a master's duty as to scaffolding.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1148–1156, 1158–1160; Dec. Dig. § 293.*]

3. MASTER AND SERVANT (§ 278*)—INJURIES TO SERVANT—ACTIONS—EVIDENCE.

   In a personal injury action by a servant, evidence *held* insufficient to establish the master's negligence.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. § 278.*]

   Hirschberg, J., dissenting.

Appeal from Trial Term, Richmond County.

Action by Joseph O. Brabson against the Fay Hunt Erecting Company. From a judgment for plaintiff and an order denying its motion for new trial, defendant appeals. Reversed and remanded.

Argued before JENKS, P. J., and HIRSCHBERG, THOMAS, CARR, and WOODWARD, JJ.

Paul Armitage, of New York City, for appellant.
Raphael Link, of New York City, for respondent.

WOODWARD, J. The plaintiff fell from a scaffolding used in connection with the erection of the steel skeleton work for a building at Ninety-Eighth street and West End avenue on the 17th day of November, 1910, and received injuries for which a jury has awarded a verdict of $6,000, and there does not appear to be any question that this is a reasonable allowance for the damages sustained. The defendant appeals from the judgment.

The defendant is a contracting corporation, and appears to have had work in progress at the time of this accident. The plaintiff was one of a gang of four men engaged in riveting the columns together, after the same had been placed and temporarily bolted. The structural steel went up two stories at a time; that is, there were no joints except at every other floor. The plaintiff with his gang came to work upon the particular building where the accident occurred on Monday, the 14th day of November. At that time the iron work was up to the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

fourth floor, and the men were at work with derricks placing the columns for the fifth and sixth floors. Mr. Hunt appears to have been the superintendent of the defendant, and he directed the plaintiff and his gang to go to work on the outside of the second floor columns. One of the members of the gang asked about materials for constructing the necessary scaffolding, and Mr. Hunt told him, according to the plaintiff's evidence, that he would have to gather up what scaffolding he could; "that the other scaffolds were in use, these scaffolds he had there; that we should gather up whatever we could find and make a scaffold to work on." The plaintiff's witnesses then testified to searching about the premises and finding four planks from eight to ten inches in width and two inches thick, and varying in length from six to twelve feet, more or less. There is some evidence intended to convey the impression that these four planks were all that could be found, but the evidence is hardly conclusive that there were not more planks in and around the building at the time. The search merely extended to the finding of these planks. The method of constructing the scaffolding was to lay two of these planks over the steel girders, extending out three or four feet over the edge of the building, and on either side of the upright column, and then to place the two shorter planks on the extended end of the first planks and outside of the column. The plaintiff's part of the work was to clinch the heated rivets with a pneumatic hammer or "gun," as it is called. To do this work he would get out on this platform, and, after clearing out the hole, would insert a heated rivet, and with the pneumatic "gun" would pound down the protruding end of the rivet, putting a head on it. The work progressed during Monday and Tuesday, so far as appears from the evidence, without any one suggesting that this platform was not sufficient for the work. On Wednesday it appears that the second-floor work had reached a point where they ran out of certain necessary materials, and, on Mr. Hunt's telling them to go to the fourth floor to work, one of the gang made the objection that the scaffolding was not safe. Mr. Hunt is said to have made some remark to the effect that he saw no trouble with it, and that he then told them to go to the fourth floor and to work on the inside of the columns, leaving the outside to be done by the other gangs who were at work there, and that the planks were all right for the inside work. The men went to work on the inside of the columns on the fourth floor, and appear to have accomplished this work without mishap. The lacking materials appear to have arrived Wednesday or Thursday, and the plaintiff's gang was directed to finish up the work on the second floor on Thursday. Nothing more appears to have been said about the scaffolding, and the plaintiff and his helpers constructed the platform on the same plan with the same materials that they had used from Monday up to Wednesday. There seems to be some uncertainty whether the plaintiff actually helped to place the planks upon the particular reconstruction where the accident happened, but it is admitted that he had all through the work taken a hand in the general details of constructing the platform around each column as it was reached. With this oft-reconstructed scaffolding in place, the plaintiff was at work in putting

a rivet in place, and he says there was something the matter with the hole and it was necessary to put on a little more pressure; that he stepped one foot back a little; that the "plank kind of twisted, you see, as though it was warped or something, twisted and wheeled right off and tipped like, somehow or other. I couldn't just exactly explain hardly how it did. Then I tried to catch myself and couldn't get hold of anything, and fell down to the ground to the bottom." All of the witnesses agree substantially as to the details of the accident, though the more probable view appears to be that the short outside plank, extending over the supporting plank, tipped a little under the weight of the plaintiff as he threw his foot back and his strength into the push of the "gun."

The case was sent to the jury under a charge to which the defendant made no objection, on the theory that the defendant's negligence consisted in not furnishing proper materials for this scaffolding. It is not claimed, and there is no evidence in that direction, that the planks were not strong enough for the purpose, or that they had any defects, or that the platform fell. The real theory was that the defendant had failed in its duty to furnish sufficiently long planks for the work, for plaintiff's counsel, at the close of the charge, distinctly stated to the court that "our issue in this case is not as to the width of the scaffold. It is as to the length of those planks; not as to the width of it." There was no claim that this was a scaffolding constructed by the defendant for the purpose of the work. It was contended merely that the defendant had failed in its duty to provide suitable materials. But just what justification the jury could have for holding that this was actionable negligence on the part of the defendant on the 17th day of November is not clear to us. There is not a particle of evidence to show that any one directed the use of this platform on the 17th, and it must have been as obvious to the plaintiff, a man of years of experience in this line of work, as to the defendant, that the plank was only six feet and six inches in length, and it is not explained how a plank of this length could have been any more dangerous than one of greater length. The complaint is not that there was not room enough on the platform. It is not pretended that he stepped off from it, but from the fact that the plank in some manner tipped slightly, and he was not able to get hold of anything, it seems to be assumed that the shortness of the plank was in some unexplained manner responsible for the accident, and that it was the defendant's fault that the plank was short, or that it had failed in its duty by not providing a longer one. It seems to us that a jury is not justified in closing its eyes to the fact that the plaintiff, a man of experience, knew the situation and accepted the risk by continuing to use the materials without protest, or without assurance on the part of the master of any kind, for the remark of Mr. Hunt that the planks were all right for work on the inside cannot be fairly held to have related to any other situation.

But a greater difficulty presents itself in the evidence. The evidence of the plaintiff is confined to the search for scaffolding materials made on the Monday previous to this accident, which occurred

on Thursday. Assuming that the evidence shows conclusively, as it does not, that there was no other material on the premises on Monday than that which was found and used, this is not sufficient to show that there was any such lack on Thursday. There is not the slightest evidence that any effort was made to find new materials after Monday. The defendant called disinterested witnesses to show that there were at least 300 long scaffolding planks delivered upon this work prior to the accident, and other witnesses who testified unequivocally that there were plenty of planks, such as the plaintiff says were required, upon the premises and available for use on the day of this accident, and there is not a particle of evidence in rebuttal. As the case stands, therefore, the evidence shows without dispute that on the day of the accident there was an abundance of the very quality of materials which it is urged the defendant was negligent in failing to provide upon the premises, and no one suggests that the plaintiff or any one else was refused the use of any of this material.

[1] We will assume that this action is properly brought under the Employers' Liability Act, and that it was proper for the court to submit the question of the assumption of the risk to the jury, yet that act does not do away with the necessity of evidence to establish a case, and we are of the opinion that the jury did not have before it any evidence which justified a finding that the defendant had failed in its duty to supply the proper materials for the performance of this work.

[2] The court distinctly charged, and there was no exception taken to it:

"That is, were the materials there at the building and about it which the men could have used? If so, the adjustment of the plank and material was within the control of the men doing the work, and, if it did furnish proper material, the defendant would not be responsible for the way they set the planks or adjusted that material."

This charge pretty effectually took the case out of the operation of section 18 of the Labor Law, and the evidence, as we find it, is undisputed that at the time of this accident, whatever may have been the condition on the Monday previous, there was an abundance of proper materials on hand.

[3] Indeed, it is difficult to understand how it can be claimed that there was any negligence in furnishing even the materials which were used, for they were in no wise defective. That they were short was open and obvious to everybody, and the accident appears to have resulted because the supporting planks were placed a little too near together, so that one of the short planks overhung enough to be tipped when an extra weight was thrown upon it. This was obviously due to a mere defect in the detail of placing the planks, and affords a very slight foundation for the plaintiff's claim.

The judgment and order appealed from should be reversed.

JENKS, P. J., and THOMAS and CARR, JJ., concur. HIRSCHBERG, J., dissents.